**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert M. PETTY, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jordan Rodrigues QUINTAL,
Jr., Defendant–Appellant.**

Nos. 90–30291, 90–30294.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1992.

Decided Jan. 7, 1993.

As Amended May 6, 1993.

---

Richard J. Troberman, Seattle, WA, for defendant-appellant Petty.

David Marshall, Seattle, WA, for defendant-appellant Quintal.

Jerry Diskin, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellee.

Before: HUG, NOONAN, and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

A large number of issues in this and related cases have been disposed of by memorandum disposition and by a separate opinion filed herewith. The present opinion is addressed to a single point, raised by Jordan Quintal and Robert M. Petty. It is the quantity of drugs to be attributed to a conspirator in a drug conspiracy.

We remand to the district court for resentencing of these defendants.

## FACTS

The evidence established only that Quintal was involved in a single sale of three kilograms of cocaine to Donald Kessack. The sale took place in July 1989, three months before the five-year conspiracy was broken up by the government. In contrast, the evidence indicated that Robert Petty was a founding member of the conspiracy; that he bought and resold to Kessack large amounts of cocaine over the five year period; that he organized the shipment of the drugs; that he supervised couriers; that he handled their payments; and that he took large profits.

## PROCEEDINGS

On July 27, 1990, the district court sentenced Quintal on the basis that, as to him, the conspiracy involved the distribution of 15 to 49 kilograms of cocaine. Petty was sentenced on the total quantity of drugs distributed by the conspiracy over five years.

Quintal and Petty challenge the quantities of drugs on which their sentences are based. Quintal contends that he should have only been sentenced on the basis of drugs distributed in the last three months of the conspiracy. Petty contends that he should not have

been sentenced on the basis of kilograms of cocaine that Kessack obtained from John Brownwood, because Brownwood was an independent supplier of Kessack and a direct competitor of Petty.

## ANALYSIS

Our starting point in the Sentencing Guidelines must be Part D, "Offenses Involving Drugs." Under this heading, § 2D1.1, "Unlawful Manufacturing, Importing, Exporting, or Trafficking (including Possession with Intent to Commit These Offenses)," provides a scale of penalties in terms of the particular drug distributed and the quantity distributed. § 2D1.4, "Attempts and Conspiracies," deals with the defendant who is convicted of conspiracy to distribute drugs. Commentary to this section provides:

*Application Notes:*

1. If the defendant is convicted of a conspiracy that includes transactions in controlled substances in addition to those that are the subject of substantive counts of conviction, each conspiracy transaction shall be included with those of the substantive counts of conviction to determine scale ... If the defendant is convicted of conspiracy, *see* Application Note 1 to § 1B1.3 (Relevant Conduct).

U.S.S.G. § 2D1.4 (Commentary, Application Note 1).

The cross-reference to Application Note 1 of § 1B1.3 means that a second guideline must be taken into account. Part B provides "General Application Principles". § 1B1.3 deals with "Relevant Conduct (Factors that Determine the Guideline Range)." This section specifies:

Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) specific offense characteristics and (iii) cross-references in Chapter Two, and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise be accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

Commentary on this section states:

Because a count may be broadly worded and include the conduct of many participants over a substantial amount of time, the scope of the jointly-undertaken criminal activity, and hence relevant conduct, is not necessarily the same for every participant. Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity that the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level under this guideline.

U.S.S.G. § 1B.1.3, Commentary, Application Note 1.

This application note is then illustrated by the following pertinent Illustration e:

Defendants H and I engaged in an ongoing marihuana importation conspiracy in which Defendant J was hired only to help off-load a single shipment. Defendants H, I, and J are included in a single count charging conspiracy to import marihuana. For the purposes of determining the offense level under this guideline, Defendant J is accountable for the entire single shipment of marihuana he conspired to help import and any acts or omissions in furtherance of the importation that were reasonably foreseeable. J is not accountable for prior or subsequent shipments of marihuana imported by Defendants H or I if those acts were beyond the scope of, and not reasonably foreseeable in connection with, the criminal activity he agreed to jointly undertake with Defendants H and I (*i.e.*, the importation of the single shipment of marihuana).

U.S.S.G. § 1B1.3, Commentary, Application Note 1, Illustration e.

Interpreting the Guidelines, we read the Commentary to § 2D1.4 as mandating that in the present case we turn to § 1B1.3: "If the defendant is convicted of conspiracy, *see* Application Note 1 to § 1B1.3 (Relevant Conduct)".

■ We then find that § 1B1.3 is explicit in making a distinction among members of a conspiracy in terms of "the scope" of the activity. This approach distinguishes the Guidelines from the general harsh law of conspiracy that a conspirator is " 'bound by all that has gone on before in the conspiracy.' " *United States v. DiCesare,* 765 F.2d 890, 900 (9th Cir.1985) (quoting *United States v. Saavedra,* 684 F.2d 1293, 1301 (9th Cir.1982)), *amended on other grounds* 777 F.2d 543 (9th Cir.1985). Under the Guidelines each conspirator, for sentencing purposes, is to be judged not on the distribution made by the entire conspiracy but on the basis of the quantity of drugs which he reasonably foresaw or which fell within "the scope" of his particular agreement with the conspirators.

It has proved a bit of a puzzle for the courts to interpret the rule set by the commentaries. The Seventh Circuit started to do so in terms of foreseeability only, stating "the concept of foreseeability (a forward-looking concept) must be turned around 180 degrees and be applied to the conduct of co-conspirators occurring before the entry of a particular defendant into the conspiracy." *United States v. Edwards,* 945 F.2d 1387, 1393 (7th Cir.1991), *cert. denied sub nom., Martin v. United States,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992). Turning the concept of foreseeability around, *Edwards* held coconspirators could be liable for the drugs distributed before they joined the conspiracy if they had "demonstrated a substantial degree of commitment to the conspiracy's objectives." *Id.* 945 F.2d at 1394.

We do not see how a court has authority to turn a concept "around 180 degrees." *See United States v. O'Campo,* 973 F.2d 1015, 1024 (1st Cir.1992) ("[w]e decline to engage in a construction of the language of foreseeability that requires such a forced linguistic *volte-face*"). But *Edwards* ignored the language of the Guidelines on "the scope of the agreement." The Second Circuit picked up this language and wrote a gloss on it, holding that the latecomer to a conspiracy was liable for drugs earlier distributed, of which he "knew or reasonably should have known." *United States v. Miranda–Ortiz,* 926 F.2d 172, 178 (2d Cir.), *cert. denied* —— U.S. ——,

112 S.Ct. 347, 116 L.Ed.2d 287 (1991). This gloss introduces a kind of negligence standard into conspiracy law. It goes beyond the terms of the Sentencing Guidelines. *Cf. United States v. Navarro,* 979 F.2d 786, 789 (9th Cir.1992) (holding that the sentencing court erred in failing to make a factual determination as to the amount of drugs attributable to the defendant after his participation in the charged conspiracy).

An approach closer to the Guidelines was taken by the Seventh Circuit in *United States v. Thompson,* 944 F.2d 1331, 1343–44 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992). The court observed that a conspiracy conviction under 21 U.S.C. § 846 "does not establish beyond reasonable doubt that the defendant conspired with every other person charged in the indictment (or with any of them for that matter). It simply means that he agreed with at least one other person to violate the drug laws." *Id.* The court went on to say:

Here, the government, and the district court, assumed that because the total quantity of drugs attributable to the defendants named in Count 1 of the indictment (the conspiracy count) exceeded 50 kilograms, Wynn should be held accountable for that amount. The court held Randy Thompson accountable for only 30 kilograms because he didn't begin supplying cocaine to his cousins until later. The court did not determine, however, whether either Wynn or Thompson could fairly be said to have conspired with each individual named in the indictment (which is another way of saying that the court did not determine the scope of each defendant's agreement) as the guidelines require. Without such a determination, the court could not accurately calculate the quantity of cocaine for which these defendants can reasonably be held accountable. We therefore vacate their sentences and remand their cases to the district court to make this determination with respect to each. *Id.* 944 F.2d at 1344 (citation omitted).

■ *Thompson* is persuasive precedent as to the determination of the scope of the agreement. The case conforms with Illustration (e) of U.S.S.G. § 1B1.3, Commentary,

Application Note 1, where a defendant convicted of being a participant in a general conspiracy is sentenced only on the basis of the drugs that he actually agreed to distribute. In accordance with *Thompson* we remand the cases of Quintal and Petty for the district court to determine two things: (1) the quantity of drugs distributed that were reasonably foreseeable by each and (2) the quantity of drugs distributed that were within the scope of the particular agreement that each entered.

■ We do not attempt to determine these quantities. The government must establish them by a preponderance of the evidence. By way of example, however, we note that Quintal could not have "foreseen" the drugs distributed before he joined the conspiracy, *see United States v. Chavez–Gutierrez,* 961 F.2d 1476, 1479–81 (9th Cir.1992), and that the scope of his agreement may or may not have been retrospective. Petty may or may not have foreseen the drug transactions of Kessack and Brownwood, and these transactions may or may not have been within the scope of his agreement. *See United States v. Johnson,* 956 F.2d 894, 906 (9th Cir.1992).

**Sentences VACATED; REMANDED for resentencing.**