5 F.3d 543
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Rosa Olivera RIVERA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alfonso RIVERA-FARIAS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Maria DIAZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francisca LARA, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rosendo CISNEROS, Defendant-Appellant.
 Nos. 92-10601, 92-10613, 92-10614, 92-10615 and 92-10676.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 1, 1993.
Decided Sept. 14, 1993.
 
 Appeal from the United States District Court for the Eastern District of California, No. CR-91-00209-OWW; Oliver W. Wanger, District Judge, Presiding.
 E.D.Cal.
 AFFIRMED.
 Before: REAVLEY,* PREGERSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Rosa Olivera Rivera (Rivera), Alfonso Rivera-Farias (Farias), Maria Diaz, Francisca Lara, and Rosendo Cisneros appeal their convictions for various drug offenses. In addition, Rivera appeals her sentence which was imposed under the Sentencing Guidelines. We affirm.
 
 
 3
 A. Severance.
 
 
 4
 Rivera and Diaz claim that their cases should have been severed from those of their co-defendants. When they filed their pre-trial motions for severance, the district court refused to sever but left open the possibility of revisiting the motions at a later time. They did not renew the motions at any later time. Nothing indicates that renewing the motions would have been an empty formality. See United States v. Felix-Gutierrez, 940 F.2d 1200, 1208 (9th Cir.1991), cert. denied, --- U.S. ----, 113 S.Ct. 2332, 124 L.Ed.2d 244 (1993). Thus, they have waived the issue. United States v. Davis, 932 F.2d 752, 762 (9th Cir.1991).
 
 
 5
 B. Brady and Jencks Material.
 
 
 6
 Rivera, Diaz and Farias asked the government to produce the exculpatory and impeachment evidence required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and by the Jencks Act. 18 U.S.C. Sec. 3500(b). The government claims that it has done so.
 
 
 7
 Of course, a defendant does not have the right to rummage about in the government's file. See Pennsylvania v. Ritchie, 480 U.S. 39, 59, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987); United States v. Michaels, 796 F.2d 1112, 1116 (9th Cir.1986), cert. denied, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987). However, we have suggested that a district court can properly review the relevant file and decide for itself whether there is material that should be disclosed. See, e.g., United States v. Ochoa-Sanchez, 676 F.2d 1283, 1288 (9th Cir.), cert. denied, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982). Here the district court did just that, and appellants have asked us to now conduct our own review. We have done so and we find that the district court did not err when it determined that no evidence other than that it ordered released was discoverable.
 
 
 8
 C. Lara's Threats.
 
 
 9
 All appellants assert that it was improper to admit certain threats that Lara made against a witness during the time that the witness was still giving testimony. There can be little doubt that a threat was made. The district court found that evidence of the threat was relevant and, after hearing argument that it was unduly prejudicial, decided to admit it. Evidence of threats is relevant. See Phillips v. United States, 334 F.2d 589, 592 (9th Cir.1964), cert. denied, 379 U.S. 1002, 85 S.Ct. 723, 13 L.Ed.2d 703 (1965). We review the district court's admission of evidence for abuse of discretion. United States v. Garcia-Orozco, No. 92-50613, slip op. 7281, 7284 (9th Cir. July 12, 1993). We cannot say that the court abused its discretion in admitting the evidence in question against Lara. The evidence was not especially inflammatory and the jury was in a good position to evaluate the threat in the light of the jury's own experience and the circumstances involved.
 
 
 10
 The other appellants assert that the spillover effect of the threat evidence must have prejudiced their cases. We disagree. The testimony was brief, it was not particularly inflammatory, and the district court admonished the jury even before the evidence was admitted. There is no reason to believe that the jury was not able to compartmentalize the evidence as the law required. See United States v. Cuozzo, 962 F.2d 945, 950 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 475, 121 L.Ed.2d 381 (1992).
 
 
 11
 D. Bad Act Evidence.
 
 
 12
 Farias asserts that the district court improperly admitted other bad act evidence against him when it allowed testimony about a small sample of cocaine that he gave to a government informant before the first date mentioned in the Indictment--August 9, 1991. However, as the district court pointed out, it was not an "other" act at all. It was offered because it was connected to the conspiracy itself, a conspiracy that was alleged to have started "no later than on or about August 9, 1991." The small amount of cocaine was handed over so that the informant could assay the quality of cocaine available to the conspirators. Thus, the district court did not err in admitting the evidence.
 
 
 13
 E. Mistrial Motion.
 
 
 14
 Lara moved for a mistrial when a government agent mentioned that after being arrested Farias referred to Lara as the source of the cocaine. We review the district court's denial of that motion for abuse of discretion. Davis, 932 F.2d at 761. Ordinarily where, as here, the district court immediately gives a cautionary instruction to the jury, which tells it to put the statement "out of your mind," the effect of the improper comment is deemed cured. Id. There is nothing to cause us to deviate from that normality here. That is particularly true where there was substantial independent evidence which tended to show that Lara was the source of the cocaine. That single improper stray comment by a witness could not have been of much consequence in the whole picture. See id. at 762.
 
 
 15
 F. Prosecutorial Misconduct.
 
 
 16
 Rivera and Diaz both claim that the prosecution committed various acts of misconduct during closing argument.
 
 
 17
 First, they claim that the prosecutor vouched for a witness' veracity. They did not object to the alleged vouching, so we review their claim for plain error. United States v. Endicott, 803 F.2d 506, 513 (9th Cir.1986). Of course, vouching is not proper. United States v. Smith, 962 F.2d 923, 933 (9th Cir.1992). Here, however, counsel for Rivera said that he did not know whether to believe a certain witness because he found the witness "incredible on a number of issues." The prosecutor referred to that comment and retorted that he believed the government's evidence was credible. That soft form of vouching, if vouching it was, simply righted the scales by rebutting defense counsel's comment. See United States v. Lopez-Alvarez, 970 F.2d 583, 597-98 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 504, 121 L.Ed.2d 440 (1992). That is particularly true where, as here, the prosecutor objected to defense counsel's remark and the district court said there was nothing wrong with remarks of that type.
 
 
 18
 Second, they claim that the prosecutor called attention to their failure to testify. Of course, a prosecutor cannot do that. See Lopez-Alvarez, 970 F.2d at 595-96; United States v. Castillo, 866 F.2d 1071, 1083 (9th Cir.1988). Here the prosecutor did not; he only commented on the fact that another defendant had not called an obvious corroborating witness. There was no misconduct.
 
 
 19
 Third, they assert that the prosecutor ascribed bad motives to defense counsel. Certainly a prosecutor should not do that. See Bruno v. Rushen, 721 F.2d 1193, 1195 (9th Cir.1983) (per curiam), cert. denied, 469 U.S. 920, 105 S.Ct. 302, 83 L.Ed.2d 236 (1984). We have reviewed the record citations to which the appellants refer. The prosecutor did not impugn counsel's motives.
 
 
 20
 Fourth, they point to the government's general comment that if it knew of the various witnesses that could corroborate the defense--like the obvious corroborating witness referred to above--it would have sought them out. Appellants say this was a violation of their rights under Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), because it commented upon their silence after they had been given Miranda[1] warnings. It did no such thing and does not constitute misconduct.
 
 
 21
 In short, whether taken separately or cumulatively, the asserted acts of misconduct did not result in error, plain or otherwise.
 
 
 22
 G. Sufficiency of Evidence.
 
 
 23
 Rivera and Diaz both claim that the evidence against them was insufficient to sustain their convictions. Fed.R.Crim.P. 29(a).
 
 
 24
 Sufficient evidence to support a conviction exists if "a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.) (quotation and citation omitted), cert. denied, 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). See also United States v. Enriquez-Estrada, No. 91-10613, slip op. 7027, 7032-33 (9th Cir. July 7, 1993) (the test is not what we would conclude but, rather, what a reasonable jury could conclude.)
 
 
 25
 There can be no doubt that there was a conspiracy to distribute cocaine. The only serious question that these appellants can raise is whether there was sufficient evidence to establish their knowing connection with the conspiracy, slight though that connection might have been. See United States v. Meyers, 847 F.2d 1408, 1413 (9th Cir.1988).
 
 
 26
 We have reviewed the record and we are satisfied that there was sufficient evidence--not overwhelming evidence, but sufficient evidence. For example, the jury could infer that Rivera gave a cocaine sample to Farias at one of the meetings with the government agents. Moreover, she was present at the places where the cocaine was being discussed and was to be distributed. When the agents were becoming impatient, she attempted to get them to relax and to stay. She knew that a drug deal was afoot. The jury could infer that her purpose was to see to it that the drug deal was completed. Similarly, Diaz was there when the agents were assured that the drugs would arrive. She attempted to get them to relax and when told that the agent was watching his truck which had money for the deal, she again sought to relax him. She also explained that they were supplementing their income by doing "this type of business."
 
 
 27
 H. Sentencing.
 
 
 28
 Rivera asserts that she should not have been sentenced on the basis of the four kilograms of cocaine which was on hand for distribution on September 19, 1991 and which was to have been distributed that day.
 
 
 29
 "Under the Guidelines, each conspirator may be sentenced only for the quantity of drugs that he reasonably foresaw would be distributed or that fell within the scope of his own agreement with his co-conspirators." United States v. Becerra, No. 92-30105, slip op. 7487, 7501 (9th Cir. July 16, 1993). "This approach distinguishes the Guidelines from the general harsh law of conspiracy that a conspirator is 'bound by all that has gone on before in the conspiracy.' " United States v. Petty, 992 F.2d 887, 890 (9th Cir.1993) (quotations and citation omitted). The government has the burden of establishing by a preponderance of the evidence the quantity of drugs used in setting a defendant's base offense level. Id. at 891. "The sentencing court may adopt the factual findings of the presentence report but may not adopt conclusory statements unsupported by the facts or the Guidelines." Becerra, No. 92-30105, slip op. at 7501.
 
 
 30
 In this case, the conspiracy was to distribute 20 kilograms of cocaine, and that was the amount that was to have been distributed during the first series of meetings. That particular distribution did not go through, but a deal was finally consummated for four kilograms at a later point. Rivera has no real ground to complain about the use of four kilograms to fix her sentence. That was surely a foreseeable result of the 20-kilogram sale that was first attempted and that she was certainly involved in. It was within the scope of her agreement. Moreover, under Guideline Sec. 2D1.4 (1991), the offense level is to be computed "as if the object of the conspiracy ... had been completed." Here the object, as charged, was the sale of 20 kilograms of cocaine. However, because only four kilograms were produced, it was reasonable to base the sentence on that four-kilogram amount. See U.S.S.G. Sec. 2D1.4, comment. (n. 1). That does not suggest that Rivera was not privy to and a knowing facilitator of a 20-kilogram conspiracy as charged in the Indictment. Nor does it indicate that she, somehow, was only connected to some smaller amount.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Hon. Thomas M. Reavley, Senior United States Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)