28 F.3d 109
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Dale DAVIDSON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joachim FELGENTRAEGER, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dirk Olsen HOLST, Defendant-Appellant.
 Nos. 93-30153, 93-30154 and 93-30155.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 6, 1994.
Decided May 31, 1994.
 
 1
 Before: ALARCON, NORRIS, and LEAVY Circuit Judges.
 
 
 2
 MEMORANDUM*
 
 
 3
 Appellants Robert Davidson, Joachim Felgentraeger, and Dirk Holst appeal their jury convictions and sentences for conspiracy and manufacture of methamphetamine. 21 U.S.C. Secs. 841 & 846. Holst also appeals his conviction for false declaration before a grand jury. 18 U.S.C. Sec. 1623.
 
 
 4
 * We first address Davidson's claim that he received ineffective assistance of counsel. Davidson acknowledges that his ineffective assistance claim is somewhat different from the typical ineffective assistance claim. He asserts that his own counsel's representation was perfectly acceptable, but that the ineffective assistance of his co-defendant Felgentraeger's counsel impaired his own defense efforts.
 
 
 5
 We decline to reach Davidson's novel ineffective assistance claim. We have frequently held that ineffective assistance claims are better raised on habeas so that a record may be developed. See, e.g., United States v. Sanclemente-Bejarano, 861 F.2d 206, 211 (9th Cir.1988). Refusing to reach such a claim is particularly appropriate in this case because Felgentraeger has stated explicitly that he prefers to challenge the effectiveness of his counsel in a Sec. 2255 petition. We express no view regarding the standing of a defendant to assert that his co-defendant was ineffectively represented by counsel.
 
 II
 
 6
 Holst contends that there was insufficient evidence to convict him of conspiracy to manufacture and distribute methamphetamine. 21 U.S.C. Sec. 846. Following his jury conviction on this count, the district court denied Holst's motion for a judgment of acquittal. In evaluating a denial of a motion for judgment of acquittal, we must determine whether, viewing the evidence in the light most favorable to the government, any rational juror could have found the elements of the crime beyond a reasonable doubt. United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990).
 
 
 7
 We hold there was sufficient evidence to convict Holst on the conspiracy charge, including:
 
 
 8
 . Testimony that on several occasions between August and November 1991, Holst was observed obtaining methamphetamine from Felgentraeger and returning with money.
 
 
 9
 . Testimony that on December 11, 1991, Felgentraeger provided 2 ounces of methamphetamine to Holst.
 
 
 10
 . Testimony that on December 17, 1991, Holst and a friend drove to Springfield, Oregon to purchase 2 gallons of benzaldehyde. During the trip, Holst requested that his friend enter the store to buy the chemical. When his friend asked why, Holst answered that he did not want his name on the paperwork. Holst called Felgentraeger during the purchase. Holst later provided his friend with $75 worth of methamphetamine for his trouble, and provided Felgentraeger with the benzaldehyde.
 
 
 11
 . The recovery of 2 empty gallon bottles of benzaldehyde at the Ede Road property.
 
 
 12
 . Testimony that Holst informed his friend 2 weeks after the lab was seized that the benzaldehyde was at the Ede Road property when the arrests occurred. Holst instructed his friend that "[i]f the police come and talk to you, tell them it was used for a food preservative."
 
 
 13
 . Holst's admission that he lied to a grand jury investigating Felgentraeger by testifying that he never obtained the benzaldehyde and had never received methamphetamine from Felgentraeger.
 
 
 14
 . A recorded conversation on March 12, 1992 during which Holst stated that "they can get me on conspiracy to manufacture, just like [Felgentraeger]. If they could prove I actually got chemicals."
 
 III
 
 15
 Holst argues that, given the complexity of the case, the possibility of jury confusion, and his allegation at trial that two separate conspiracies existed (one charged and one not charged), the district court erred in rejecting his request for specific unanimity instructions. Instead, the district court gave the following general unanimity instruction: "Your verdict, whether guilty or not guilty, must be unanimous." This instruction is normally sufficient to instruct jurors on the requisite basis of a verdict. United States v. Payseno, 782 F.2d 832, 835 (9th Cir.1986). When proposed instructions are denied, we review de novo instructions actually given to determine if they adequately covered the defense theory of the case. United States v. Joetzki, 952 F.2d 1090, 1095 (9th Cir.1991).
 
 
 16
 We hold that the district court did not err in refusing to give Holst's requested jury instructions. The court instructed the jury on the elements and general law of conspiracy, the law of entrapment, and the requirement of unanimity in its verdict. In addition, the jury was specifically instructed to acquit any defendant not found to be a member of the charged conspiracy, even if that defendant was found a member of another conspiracy. Viewed together, these instructions adequately covered Holst's theory of the case. Moreover, this was a relatively routine multiple defendant drug conspiracy case (in which there was substantial evidence that Holst was a member of the charged conspiracy), and there was no discrepancy between the evidence and the indictment.
 
 IV
 
 17
 Holst argues that his role in the conspiracy qualified him for a four-point guideline reduction for being a minor participant. U.S.S.G. Sec. 3B1.2.[1] We review the denial of a downward adjustment for clear error. United States v. Molina, 934 F.2d 1440, 1452 (9th Cir.1991). The district court is not required to find that the least culpable defendant is a minor participant entitled to a downward adjustment. Id. Here, Holst furthered the manufacturing operation by obtaining benzaldehyde, a critical and necessary ingredient to the methamphetamine recipe. In addition, evidence indicates that he frequently received drugs from Felgentraeger and returned with money. Based on this evidence alone, the district court did not clearly err in denying the downward adjustment.
 
 V
 
 18
 Holst contends that the district court erred in denying a two-point downward adjustment for acceptance of responsibility. U.S.S.G. Sec. 3E1.1. Holst argues that his testimony at trial, his handwritten statement to the court expressing contrition, and his statements at the sentencing hearing demonstrated his affirmative acceptance of responsibility. We review denials of acceptance of responsibility for clear error. Molina, 934 F.2d at 1450.
 
 
 19
 We hold that the district court's denial of the downward adjustment was not clearly erroneous. Holst clearly was unable to persuade Judge Hogan at the sentencing hearing that he had accepted responsibility for his role in the conspiracy. Instead, Holst was reluctant to admit his culpability with regard to his principal activity as a member of the conspiracy--his purchase of 2 gallons of benzaldehyde. His statements before Judge Hogan were a continuation of his efforts before the grand jury and at trial to deny culpability and minimize his role in the offense.[2] Clearly, Judge Hogan did not believe Holst. As for Holst's written statement, we have held that a judge may discount belated expressions of remorse. See, e.g., United States v. Restrepo, 930 F.2d 705, 710 (9th Cir.1991) (no clear error where defendant expressed remorse for the first time in a letter to the court and at the sentencing hearing).
 
 VI
 
 20
 The district court found that each defendant should be held accountable for 3 to 10 kg. of methamphetamine for sentencing purposes. This range led to a base offense level of 34. U.S.S.G. Sec. 2D1.1, Drug Quantity Table. We review this finding for clear error. United States v. Torres-Rodriguez, 930 F.2d 1375, 1389 (9th Cir.1991). All three appellants challenge the district court's determination of the amount of methamphetamine they were responsible for. Specifically, appellants challenge the district court's preponderance finding that the methamphetamine lab's production capacity was 6 to 10 kg. They argue that because the agents who seized and searched the Ede Road site did not accurately quantify the chemicals seized, the government did not present reliable information upon which the lab capacity could be calculated. They contend that the evidence relied upon to calculate the lab's capacity was so unreliable that the district court's finding of a 6 to 10 kg. capacity violated due process. United States v. Ayers, 924 F.2d 1468, 1481 (9th Cir.1991). We are unpersuaded by appellants' argument, and hold that the district court's finding was not based on data so unreliable as to violate due process.
 
 
 21
 The district court made specific written findings for each defendant, listing precisely what amounts each defendant would be held responsible for. Thus, the district court more than satisfied the requirement under U.S.S.G. Sec. 1B1.3 that each conspirator "is to be judged not on the distribution made by the entire conspiracy but on the basis of the quantity of drugs which he reasonably foresaw or which fell within 'the scope' of his particular agreement with the conspirators." United States v. Petty, 992 F.2d 887, 890 (9th Cir.1993). At sentencing, the court found the production capacity of the methamphetamine lab to be between 6 and 10 kg. It found each of the defendants responsible for 3 to 10 kg. as the amount recoverable from the substance contained in a beer keg, a component of the lab, at the time the Ede Road property was searched in December, 1991. Moreover, the court found each defendant responsible for additional amounts separate from the amount found in the keg. These additional amounts were based on drug manufacturing and distribution activities occurring between August and December, 1991. The district court rejected the probation officer's recommendation that each defendant be held accountable for 8.1 kg. in addition to the lab amount. Instead, it made more particularized findings: For Felgentraeger, the district court found 6.3 kg. in addition to the lab amount; for Davidson, an additional 5.5 kg.; and for Holst, and additional 3.9 kg., primarily consisting of the amount of methamphetamine that could be manufactured from the 2 gallons of benzaldehyde he purchased for Felgentraeger.
 
 
 22
 Thus, even if the district court erred by depending on "unreliable" information in calculating the lab's capacity, it found that each defendant was responsible for more than 3 kg. of methamphetamine independent of the amount recovered from the keg or the lab's capacity.[3] Based on these particularized findings alone, the district court did not clearly err in finding by a preponderance of the evidence that each defendant was responsible for at least 3 kg. of methamphetamine.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Holst's discussion of his minimal role in the conspiracy appears to be interwoven with an argument challenging the district court's determination of his relevant conduct under United States v. Petty, 992 F.2d 887 (9th Cir.1993). In Petty, we addressed the quantity of drugs that can be attributed to a conspirator in a drug conspiracy for sentencing purposes. We held that under the relevant conduct provision, U.S.S.G. Sec. 1B1.3, each conspirator "is to be judged not on the distribution made by the entire conspiracy but on the basis of the quantity of drugs which he reasonably foresaw or which fell within the 'scope' of his particular agreement with the conspirators." Id. at 890 (emphasis added). To the extent that Holst argues this point, it is addressed on pages 8-9 infra
 
 
 [2]
 See, e.g., Molina, 934 F.2d at 1450-51 (adjustment for acceptance of responsibility properly denied when defendant denied responsibility during trial); United States v. Barron-Rivera, 922 F.2d 549, 553 (9th Cir.1991) (same); United States v. Corley, 909 F.2d 359, 362 (9th Cir.1990) (downward adjustment properly denied when defendant attempted to minimize his role in the offense)
 
 
 [3]
 Note that the district court held each defendant responsible for only the 3 to 10 kg. recoverable from the substance in the keg, not the 6 to 10 kg. capacity of the lab