57 F.3d 1078
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Lee FABER, Defendant-Appellant.
 No. 94-30228.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 5, 1995.
Decided June 14, 1995.
 
 Before: BROWNING, REAVLEY,* and NORRIS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Paul L. Faber appeals his conviction and sentence for conspiracy to manufacture and possess with intent to distribute marijuana. He claims that the evidence used against him was obtained in an illegal search and he claims that the district court attributed too many marijuana plants to him in deciding his sentence.[1]
 
 
 3
 Based on an affidavit by Special Agent Bruce Gainer, a magistrate issued search warrants for two residences and two cars. One was for defendant's residence at 7777 S.W. 69th Avenue and the other was for the residence of Steven Jones, a co-defendant in this case. The search of the Fabers' residence revealed evidence demonstrating that the conspirators had brought marijuana stalks from four marijuana grows in the Siuslaw National Forest to the Fabers' house and prepared them for sale in his garage.
 
 A. Search Warrant
 
 4
 Faber contends that the officers seeking a warrant to search Faber's home, vehicle and person did not have probable cause to do so. He points out that he was not observed or photographed in the marijuana fields.
 
 
 5
 The affidavit of the investigating officer, Gainer, indicates that Faber's wife's car was seen at the marijuana fields. The vehicle registration indicated that the car belonged to someone living at 7777 S.W. 69th Street, the Fabers' residence. Two males had been seen driving the car registered to Mary Faber to the marijuana fields and then back to the Fabers' residence. The officer had reason to believe that the Fabers' car was being used to facilitate drug trafficking. It was reasonable to believe that the Fabers' home was also being used for that purpose. U.S. v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986) (holding that it is reasonable to search for evidence of drug trafficking at the residence of drug dealers and their associates because "evidence is likely to be found where the dealers live"). Gainer also detected a smell of marijuana outside the Fabers' residence, after a large quantity of marijuana had been harvested and transported from the fields to the Fabers' home. The probable cause finding in this case was not clearly erroneous. "The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit." U.S. v. Ocampo, 937 F.2d 485, 490 (9th Cir.1991). Gainer's affidavit gave the magistrate grounds to so conclude in this case.
 
 
 6
 B. Calculation of Offense Level based on Drug Quantity
 
 
 7
 The district court found that Faber was responsible for 99 plants from all four gardens and assigned a total offense level of 25 (after adding two levels for possession of a firearm during the offense and two levels for control and direction of other participants, and giving a three level reduction for acceptance of responsibility), a criminal history category of I and a sentencing guideline range of 57-71 months. Faber was sentenced to 57 months imprisonment and five-year supervised release. Faber contends that he should only have been held accountable for the plants in one of the four gardens discovered by the federal investigators, designated garden D, which would give him responsibility for only 8 to 18 marijuana plants and reduce his offense level and consequently his sentence.
 
 
 8
 This court has held that when sentencing participants in a drug conspiracy, "each conspirator ... is to be judged not on the distribution made by the entire conspiracy but on the basis of the quantity of drugs which he or she reasonably foresaw or which fell within 'the scope' of his particular agreement with conspirators." U.S. v. Petty, 992 F.2d 887, 890 (9th Cir.1993) (interpreting U.S.S.G. Secs. 1B1.3). The district court's findings should be reviewed for clear error. U.S. v. Willis, 899 F.2d 873, 874 (9th Cir.1990).
 
 
 9
 Faber contends that the evidence shows only that Jones, and not Faber, worked two of the gardens, designated garden A and B. Faber states that the only evidence of his knowledge of these gardens stems from the testimony of Joni Ruble, Jones' girlfriend. He contends that her statements were self-serving as she negotiated a plea agreement with the government with minimal probationary sanctions.
 
 
 10
 The court did not rely solely on Ruble's testimony in concluding that Faber could, at the very least, have reasonably foreseen the existence of the quantity of drugs involved in the conspiracy. At the sentencing hearing, the judge noted that the four gardens were all similar and located relatively close to one another. In its Findings of Fact Order, the court stated that it also relied on the amount of processed marijuana seized from the defendant's home and the length of defendant's relationship with Jones. In contrast, Faber's only evidence that he did not know about the gardens stems from the testimony of his wife. She claimed that Faber was only responsible for one grow in the conspiracy. Mary Faber also admitted in that testimony, however, that she did not have personal knowledge about Faber's drug dealings and that her statement that her husband was only responsible for one garden was essentially based on what her husband told her after he had been arrested. The court's finding was not clearly erroneous.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 **
 Honorable Thomas M. Reavley, Senior United States Circuit Judge for the United States Court of Appeals, Fifth Circuit, sitting by designation
 
 
 [1]
 Faber also contends that his criminal sentence should be vacated in light of the recently decided Ninth Circuit case, U.S. v. $405,089.23 U.S. Currency, which held that criminal proceedings and civil forfeiture proceedings based on the same acts may subject a defendant to double jeopardy. This issue is discussed in a separate published opinion