**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ronald FULBRIGHT, Defendant–**
**Appellant.**

**No. 94–30346.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 17, 1995.

Decided Nov. 8, 1995.

As Amended on Denial of Rehearing
and Suggestion for Rehearing
En Banc Dec. 29, 1995.*

---

* Judges Noonan and Hawkins have voted to reject the Suggestion for Rehearing En Banc and Judge Farris so recommends.

Daniel Donovan, Assistant Federal Public Defender, Great Falls, Montana, for defendant-appellant.

Robert J. Brooks, Assistant United States Attorney, Butte, Montana, for plaintiff-appellee.

Before: FARRIS, JOHN T. NOONAN, Jr. and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

This appeal deals with a dangerous intersection in a free society, one at which the expression of discontent or disagreement with the actions of government can collide with legitimate efforts to deal with actions intended to threaten or impede federal officials in the carrying out of their duties.

Defendant-appellant Ronald Fulbright ("Fulbright") is a Montana farmer who experienced some financial reverses. When his creditors sought foreclosure, he sought bankruptcy protection. When these efforts failed, Fulbright mailed a series of documents to United States Bankruptcy Judge John Peterson. Among the documents mailed by Fulbright was a "Notice and Demand for Declaration of Judge's Impartiality" and a "Citizens' Arrest Warrant for Citizens' Arrest." The notice "charged" Judge Peterson with numerous "crimes," including sedition, high treason, bank fraud, and armed robbery. The "warrant" purportedly authorized peace officers to somehow arrest Judge Peterson. After receiving these documents, Judge Peterson recused himself from further participation in Fulbright's bankruptcy matters. When the cases were re-assigned to another judge, Fulbright mailed a "warrant" to that judge as well.

Fulbright was indicted for conspiracy to impede or injure federal officers under 18 U.S.C. § 372 (Count I) and for obstruction of justice by intimidating or injuring federal officers in violation of 18 U.S.C. § 1503 (Counts II and III). At his jury trial, Fulbright took the stand in his own defense, admitted the mailings, but claimed that he had not intended to intimidate or harass Judge Peterson: "I was just trying to get a farm foreclosure action hopeful remedied."

Fulbright was convicted and later sentenced to a 27–month prison term, and a 3–year period of supervised release.

Fulbright appeals, claiming a series of errors in the conduct of his trial and the calculation of his sentence. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part and remand.

## I. JURY INSTRUCTIONS

### A. *The Jewell Instruction*

■ In its jury instructions, the district court gave the "deliberate ignorance" instruction derived from *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir.) (en banc), *cert. denied*, 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), known as the *Jewell* instruction.[1] We review the propriety of the *Jewell* instruction de novo. *United States v. Asuncion*, 973 F.2d 769, 772 (9th Cir.1992). A *Jewell* instruction is appropriate if the evidence supports an inference that the defendant deliberately avoided obtaining knowledge that renders his conduct illegal. *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir.), *cert. denied*, 488 U.S. 838, 109 S.Ct. 103, 102 L.Ed.2d 78 (1988); *see also United States v. Sanchez–Robles*, 927 F.2d 1070, 1075 (9th Cir.1991).

■ During its cross-examination of Fulbright, the government focused on Fulbright's legal research experience and use of *Black's Law Dictionary* to find legal definitions. This evidence, the government argues, demonstrates that Fulbright was aware of a high probability that his conduct was illegal. Even if knowledge of illegality had been an element of the crime, however, this evidence would have been insufficient to give rise to an inference of deliberate ignorance. To justify a *Jewell* instruction in such circumstances, the government must show more than a few forays into a law library by a layman. Deliberate ignorance (sometimes referred to as willful blindness) may be found only "where it can almost be said that the defendant actually knew." *Jewell*, 532 F.2d at 704 (quoting G. Williams, *Criminal Law: The General Part*, § 57 at 159 (2d ed. 1961)). Since the evidence showed, at most, reckless avoidance of knowledge by Fulbright, the district court's *Jewell* instruction would have been improper even if Fulbright's knowledge of the illegality of his conduct had been relevant. *See Alvarado*, 838 F.2d at 314; *United States v. Pacific Hide & Fur Depot, Inc.*, 768 F.2d 1096, 1098 (9th Cir.1985).

■ The error, however, was harmless. In the context of this case, the *Jewell* instruction essentially allowed the jury to conclude that Fulbright was not ignorant of the law. Since ignorance of the law is not a defense, *Lambert v. California*, 355 U.S. 225, 228, 78 S.Ct. 240, 242–43, 2 L.Ed.2d 228 (1957), there was no harm in instructing the jury that Fulbright knew or recklessly avoided knowing the law.

### B. *The Pinkerton Instruction*

The district court also made a mistake in its instruction regarding the so-called *Pinkerton* rule, concerning vicarious liability among co-conspirators.[2] After explaining that each member of a conspiracy can be punished for the crimes of the other members committed during and in furtherance of the conspiracy, the court stated: "Therefore, you may find the defendant guilty of <u>conspiracy as charged in count I</u> of the superseding indictment if the government has proved each of the following elements beyond a reasonable doubt...." The underscored language should instead have been, "obstruction of justice as charged in counts II and III." Both parties acknowledge that an error was made, but they disagree about the consequences of that mistake.

---

1. The instruction reads:
   You may find that a defendant acted knowingly if you find beyond a reasonable doubt that a defendant was aware of a high probability that the acts were criminal and deliberately avoided learning the truth. You may not find such knowledge, however, if you find that a defendant believed his acts were lawful, or if you find that a defendant was simply careless.

2. In *Pinkerton v. United States*, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed.2d 1489 (1946), the Supreme Court held that a member of a conspiracy may be held liable for the substantive crimes committed by his co-conspirator in furtherance of the conspiracy.

1. *Is "plain error" the appropriate standard of review?*

During the discussion regarding the instructions, Fulbright's counsel clearly objected to the error, and both the court and the prosecutor agreed that the language should be changed. For some reason, however, the court did not correct the error before charging the jury. Since the court had previously agreed to correct the instruction, it was incumbent on the defense to call the error to the court's attention. Had Fulbright's counsel alerted the district court of its oversight, it is apparent the court would have corrected its mistake. Because Fulbright failed to raise a contemporaneous objection, we review the instruction for plain error. *United States v. Fagan*, 996 F.2d 1009, 1016 (9th Cir.1993); *see* Fed.R.Crim.P. 52(b).

2. *Is the instruction plainly erroneous?*

■ Fulbright argues that the court's error allowed him to be convicted of conspiracy if the jury determined that he or one of his co-defendants committed the underlying offense of obstruction of justice. According to Fulbright, this error permitted the jury to convict him without considering the elements of conspiracy, mandating a new trial. Fulbright is incorrect. The instruction was intended to inform the jury that Fulbright could be convicted of obstructing justice if his co-conspirators committed that crime in furtherance of the conspiracy. Instead, the judge told the jury that Fulbright could be convicted of conspiracy as charged in count I if one of his co-defendants committed the crime of obstruction of justice (the crime underlying the conspiracy). However, in the erroneous instruction, the district court went on to state that the government must prove, beyond a reasonable doubt, that Fulbright "was a member of the same conspiracy at the time one of the offenses charged in count II or count III was committed." In essence, then, the district court instructed the jury that Fulbright could be convicted of conspiracy if he was guilty of conspiracy. This logic, while circular, is not plainly erroneous and does not omit an element of the offense. To determine whether Fulbright was "a member of the ... conspiracy" as required by the

erroneous instruction, the jury had to look to the elements of conspiracy set forth in the correct conspiracy instruction. Though somewhat confusing, the incorrect *Pinkerton* instruction was not plainly erroneous.

## II. SUFFICIENCY OF THE EVIDENCE

■ Fulbright argues that there was insufficient evidence to sustain his convictions. There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Lennick*, 18 F.3d 814, 819 (9th Cir.1994).

### A. *Count I—Conspiracy*

■ Fulbright correctly notes that the government did not present direct evidence of a conspiratorial agreement between himself and his co-defendants. However, the existence of an agreement may be inferred from circumstantial evidence. *United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir. 1987). *See also United States v. Castro*, 972 F.2d 1107, 1111 (9th Cir.1992) ("The government does not have to present *direct* evidence. Circumstantial evidence and the inferences drawn from that evidence will sustain a conspiracy conviction."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1350, 122 L.Ed.2d 731 (1993); *United States v. Calabrese*, 825 F.2d 1342, 1348 (9th Cir.1987) ("A defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions.").

■ Fulbright and his co-defendants mailed substantially identical arrest warrants to the bankruptcy judges, and Fulbright provided the UCC–1 forms that his co-defendants attempted to file. "The coordinated actions of the codefendants are strong circumstantial evidence of an agreement. The likelihood that these actions were not driven by an agreement is extremely remote." *United States v. Hernandez*, 876 F.2d 774, 778 (9th Cir.), *cert. denied,* 493 U.S. 863, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989). The jury

could reasonably infer from the defendants' concerted action that "all the parties [were] working together understandingly, with a single design for the accomplishment of a common purpose." *United States v. Cloud,* 872 F.2d 846, 852 (9th Cir.1989) (quoting *United States v. Monroe,* 552 F.2d 860, 862–63 (9th Cir.), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2936, 53 L.Ed.2d 1069 (1977)). The evidence is sufficient to support the conspiracy conviction.

### B. *Count II—Obstruction of Justice*

■ Viewed, as it must be, in the light most favorable to the government, the evidence sustaining the conviction on count II is sufficient. Fulbright admitted sending the arrest warrant to Judge Peterson, and although he denied having the specific intent to obstruct justice, it was not unreasonable for the jury to infer the necessary intent from the evidence presented.

### C. *Count III—Aiding and Abetting Obstruction of Justice*

While acknowledging that co-defendant Haskins's acquittal of the principal offense charged in count III does not preclude his conviction of aiding and abetting, Fulbright argues that his conviction should be reversed because the government failed to prove that *anyone* committed the principal offense.

■ The government responds simply by saying that "there was a great deal of proof the principal offense was committed." But from the midst of all that proof, the government can extract only one concrete example: "Mr. Haskins aided and directed Mr. Coleman to file substantially identical papers to those in his own bankruptcy. Mr. Coleman purchased those papers from Mr. Fulbright." Even viewed in the government's favor, this evidence does not amount to sufficient proof that Fulbright aided and abetted Haskins or anyone else to obstruct the administration of justice in Haskins's bankruptcy. At best, the evidence shows that Fulbright aided Coleman, who was also aided by Haskins, to file papers in *Coleman's* bankruptcy. This is not the principal offense charged in count III.

■ To sustain an aiding and abetting conviction, this court "require[s] evidence showing that a principal offense has been committed—including requiring evidence that some principal had the requisite intent." *United States v. Powell,* 806 F.2d 1421, 1424 (9th Cir.1986). Because there is no evidence that Fulbright, Coleman, or anyone else had the specific intent to obstruct justice in Haskins's bankruptcy proceeding, we reverse Fulbright's conviction on count III.

## III. CONSTITUTIONAL ISSUES

■ A constitutional challenge to the district court's denial of a motion to dismiss is reviewed de novo. *United States v. Palmer,* 3 F.3d 300, 305 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1120, 127 L.Ed.2d 429 (1994).

### A. *Redaction of the Indictment*

At the close of the government's case, Fulbright moved to dismiss count II because the government presented no evidence regarding the allegation in the indictment that Fulbright had filed a UCC–1 financing statement that "falsely represented ... that Judge Peterson was indebted to [Fulbright]." Over a defense objection, the district court treated the motion as a motion to strike surplusage, and it deleted the language referring to the UCC–1 form from the indictment supplied to the jury. Fulbright argues that the court's redaction constituted an impermissible amendment of the indictment, in violation of the Fifth Amendment.

■ The district court's amendment was proper because it did not broaden the scope of the indictment, as it eliminated the UCC–1 form from consideration. *See United States v. Miller,* 471 U.S. 130, 138–40, 105 S.Ct. 1811, 1816–17, 85 L.Ed.2d 99 (1985) (holding that a trial court may amend an indictment, so long as the scope of the remaining charges is narrower than before). Although the remaining provisions might be somewhat less specific in that they only refer generically to "threatening letters and communications," the references were not so generic as to give the government a *carte blanche* to introduce any evidence whatsoever. The obstruction of justice charge in count II did not depend

solely on the unproven allegation that Fulbright filed a false UCC–1 form; it also alleged he attempted to injure or intimidate Judge Peterson by sending "threatening letters." Therefore, the indictment, even as redacted, satisfied the dual purpose of indictments: "[T]o apprise a defendant of the charge against which he must defend, and to enable him to plead double jeopardy." *United States v. Givens,* 767 F.2d 574, 584 (9th Cir.1985) (citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974)). Since the redacted indictment is not more broad than the original version, Fulbright has no complaint. The district court did not violate Fulbright's Fifth Amendment rights by striking the UCC–1 language from the indictment.

### B. *Void for Vagueness*

Fulbright argues that the statutes under which he was convicted are unconstitutionally vague as applied to his conduct. He claims that the "mere filing of an official document (UCC forms) or the filing of a lawsuit can constitute 'force' or 'threat' or 'intimidation' within the meaning of the statute." However, it is the nature of these documents, not the simple act of filing them, that brings them within the statutes' purview. Filing a *false* UCC form, or issuing an *illegitimate* arrest warrant is prohibited— the statutes are not impermissibly vague as applied.

### C. *Free Speech Violation*

Next Fulbright contends that the statutes are an overbroad content and viewpoint regulation in violation of the First Amendment. While conceding that the government has a legitimate interest in preventing the intimidation of public officials, Fulbright claims that the statutes are not narrowly tailored to serve that interest. This argument suffers from the same flaw as the previous one—it is not the filing of authorized court documents that is punishable, so no legitimate free speech interest is implicated. The district court properly denied Fulbright's motion to dismiss based on alleged constitutional violations.

### IV. SEARCH WARRANT

The issuance of a search warrant is reviewed for clear error. *United States v. Baldwin,* 987 F.2d 1432, 1435 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993); *United States v. Bertrand,* 926 F.2d 838, 841 (9th Cir.1991). This court must determine whether there was a "substantial basis" for concluding that the warrant was supported by probable cause. *United States v. Brown,* 951 F.2d 999, 1002 (9th Cir.1991). The magistrate making the original determination of probable cause is accorded significant deference by the reviewing court. *In re Grand Jury Subpoenas dated December 10, 1987,* 926 F.2d 847, 856 (9th Cir.1991); *United States v. McQuisten,* 795 F.2d 858, 861 (9th Cir.1986).

Fulbright argues that the supporting affidavit for the warrants in this case did not give rise to probable cause, doing no more than to recite the facts set forth in the indictment. He also claims that the scope of the search authorized by the warrant was too broad. The warrant for "any and all" records related to "We The People" was too broad. "We The People" was not shown to be a pervasively criminal organization. *United States v. Kow,* 58 F.3d 423, 427 (9th Cir.1995). We sever this portion from the otherwise valid portion of the warrant. *United States v. Gomez–Soto,* 723 F.2d 649, 654 (9th Cir.1984). On this appeal, Fulbright has not shown that his trial was affected by any record produced by the invalid portion of the warrant. We, therefore, uphold the conviction.

### V. SENTENCING

Fulbright contends that the district court applied the wrong section of the Sentencing Guidelines in calculating his sentence. The application of a particular sentencing guideline to a specific set of facts is reviewed de novo. *United States v. Hanson,* 2 F.3d 942, 947 (9th Cir.1993).

Following the Statutory Index to the Sentencing Guidelines, the district court used U.S.S.G. § 2J1.2 to calculate Fulbright's sentence. Fulbright argues that the court should have used U.S.S.G. § 2A2.4—the

guideline dealing with obstructing or impeding federal officers—which would have resulted in a base offense level of 6. We agree.

■ The guidelines cross-referenced in the Statutory Index are not mandatory. "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, [the court should] use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted." U.S.S.G. Appendix A. *See also* U.S.S.G. § 1B1.2, comment (n. 1).

■ We hold that Fulbright's conduct was more analogous to impeding a federal officer than to obstructing justice, so we remand the case for resentencing under U.S.S.G. § 2A2.4.

### CONCLUSION

Fulbright's convictions on counts I and II are affirmed, but reversed on count III. We remand for resentencing under U.S.S.G. § 2A2.4.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.