89 F.3d 847
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Floyd Daverlin OSBORNE, Defendant-Appellant.
 No. 94-50546.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 10, 1995.
Decided May 1, 1996.
 
 Before: BROWNING, NORRIS, REINHARDT Circuit Judges.
 MEMORANDUM*
 OVERVIEW
 Law enforcement officers saw Floyd Osborne, a twenty-year old with no criminal record, carrying chemicals into a residential garage housing a laboratory with the immediate potential of manufacturing 43 kilograms of PCP. A jury convicted him of: (1) conspiracy to manufacture PCP, 21 U.S.C. § 846; (2) possession of PCC with intent to manufacture PCP, 21 U.S.C. § 841(a)(1); and (3) attempt to manufacture PCP, 21 U.S.C. § 846 and § 841(a)(1). Osborne was sentenced to 235 months based on the lab's immediate manufacturing capacity.
 On appeal, Osborne challenges both his conviction and the sentence. We affirm the conviction but vacate the sentence and remand for resentencing. The parties are aware of the facts and procedural history of the case; accordingly, we do not set them forth here.
 DISCUSSION
 I. The evidence was sufficient to convict Osborne of conspiracy to manufacture PCP, possession of PCC with intent to manufacture PCP, and attempt to manufacture PCP.
 A. Conspiracy to Manufacture PCP
 The essential elements to the offense of conspiracy are an agreement by two or more people to commit an illegal act. United States v. Shabani, 115 S.Ct. 382, 384 (1994). Once the existence of a conspiracy is established, a defendant can be convicted of knowing participation in the conspiracy, even though his connection to the conspiracy is slight, if the evidence establishes defendant's connection beyond a reasonable doubt. United States v. Stauffer, 922 F.2d 508, 514-15 (9th Cir.1990).
 The police saw Osborne go into and out of the locked garage, owned by co-conspirator, Brian Brim, which housed a PCP laboratory. He carried a package containing piperidine, buckets, and distilled water into the garage. When the police later pulled Osborne over in a van, they found 10 to 12 cans of lye inside. It is a reasonable inference that the cans of lye were the same cans later found in Brim's abandoned maroon van. Thus, the evidence is sufficient to establish an agreement between Osborne and Brim. See United States v. Hegwood, 977 F.2d 492, 497 (9th Cir.1992), cert. denied, 113 S.Ct. 2348 (1993).
 Osborne entered the garage carrying piperidine, a precursor chemical. An officer testified that there was a strong chemical odor inside the garage and that the chemicals were in plain view. Thus, the evidence was also sufficient to conclude that Osborne knew of the illicit purpose of the laboratory and that he intended to participate in the conspiracy to manufacture PCP. See United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir.), cert. denied, 498 U.S. 961 (1990).
 B. Possession of PCC with Intent to Manufacture PCP.
 Osborne's challenge to his conviction for possession of PCC with the intent to manufacture PCP is also without merit. The elements of possession of PCC with intent to manufacture PCP are knowledge of the contraband's presence and the capacity to exercise dominion and control over it, United States v. Enriquez-Estrada, 999 F.2d 1355, 1359 (9th Cir.1993), and intent to manufacture. Because Osborne and Brim were co-conspirators, Osborne may be held liable for the acts of Brim.[1] Pinkerton v. United States, 328 U.S. 640, 645-46 (1946). Brim purchased precursor chemicals and transported them to his garage, which was found to contain PCC. This is sufficient evidence to permit a rational trier of fact to conclude that Brim knew of the PCC and exercised dominion and control over it.
 The government's witness testified that the only known purpose of PCC is to manufacture PCP. The evidence was therefore sufficient for the jury to conclude that Brim not only possessed PCC, but that he also intended to manufacture PCP. Thus, there was sufficient evidence to convict Osborne of possession of PCC with the intent to manufacture PCP.
 C. Attempt to Manufacture PCP.
 To be convicted of attempting to manufacture PCP, a defendant must (1) intend to manufacture PCP, and (2) take a substantial step toward manufacturing PCP that strongly corroborates that intent. United States v. Snell, 627 F.2d. 186, 187 (9th. Cir.1980), cert. denied, 450 U.S. 957 (1981). To constitute a substantial step, the act must go beyond mere preparation, and some appreciable fragment of the crime must be in progress. United States v. Runco, 873 F.2d 1230, 1232 (9th Cir.1989).
 The jury was given a Pinkerton instruction on the attempt count. Brim owned the residence housing a PCP laboratory, purchased a large quantity of the precursor chemicals needed to manufacture PCP, and owned two vehicles that were used to transport precursor chemicals to his house. The government's expert witness testified that the PCC had been drying for several days. There was enough evidence to conclude that Brim attempted to manufacture PCP, and thus to hold Osborne criminally liable on this count.
 II. Did the district court err in determining Osborne's base offense level?
 This court reviews the sentencing court's interpretation and application of the guidelines de novo and its factual findings for clear error. United States v. Mullins, 992 F.2d 1472, 1478-79 (9th Cir.), cert. denied, 114 S.Ct. 556 (1993). "Whether a particular guideline applies to a specific set of facts is a question of law reviewed de novo." United States v. Hanson, 2 F.3d 942, 947 (9th Cir.1993).
 A. Section 2D1.1 or 2D1.11
 Osborne contends that the district court erred in selecting the guideline section under which he should be sentenced. The district court sentenced Osborne under U.S.S.G. § 2D1.1, which applies to the manufacture of controlled substances (including PCC and PCP). In so doing, the court rejected Osborne's claim that he should be sentenced under U.S.S.G. § 2D1.11, which applies to the possession of precursor chemicals (including piperidine). We find no error.[2]
 Section 1B1.2 of the Guidelines instructs the sentencing court to determine "the offense guideline section ... most applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." U.S.S.G. § 1B1.2(a). The accompanying commentary refers to the Guidelines' Statutory Index (Appendix A), which "specifies the guideline section or sections ordinarily applicable to the statute of conviction." U.S.S.G.App.A at 373.
 Osborne was convicted under 21 U.S.C. § 846 (attempt and conspiracy) and 21 U.S.C. § 841(a)(1) (possession of PCC with intent to manufacture PCP), and as a general matter, defendants convicted of these offenses should be sentenced under section 2D1.1 according to the Statutory Index. See United States v. Myers, 993 F.2d 713, 715-16 (9th Cir.1993). Although the Statutory Index does not "establish immutably the exclusive list of available guidelines for given offenses," United States v. Cambra, 933 F.2d 752, 755 (9th Cir.1991), and in an a typical case, the court may use "the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted," U.S.S.G.App.A. at 373 (emphasis added),[3] we do not find this case atypical. Although Osborne was observed carrying precursor chemicals into Brim's garage, he also entered the garage where the PCP laboratory equipment was in plain sight. His conduct is similar to that of a lesser player in a conspiracy to manufacture PCP. The extent of his role is taken into account in determining the amount of drugs he is responsible for and whether he receives a downward adjustment, not by sentencing him outside the statutory index.
 B. PCC or PCP?
 Osborne argues that the district court erred in sentencing him based on the amount of PCP that could have been produced from the chemicals in the garage, and that the court should have based his sentence on the amount of PCC that was in the garage or that could have been produced from the chemicals in the garage. We disagree.
 Section 2D1.1 of the Guidelines applies to offenses involving PCC as well as to offenses involving PCP. However, the base offense level for PCP related offenses is higher than that for PCC related offenses.[4] At the sentencing hearing, Osborne argued that, even if it was foreseeable that PCC would be manufactured from the materials in the garage, it was not foreseeable that PCP would be produced. The district judge specifically rejected this argument.
 While the district judge based her determination of the amount attributable to Osborne on the jury's verdict, as explained infra, her determination of the type of substance for which Osborne could be held accountable was based on her own assessment of the evidence. In accordance with section 1B1.3(a)(1)(B), the district court made an independent finding that PCP was the foreseeable product of the conspiracy in which Osborne was involved. See United States v. Petty, 992 F.2d 887, 890 (9th Cir.1993); United States v. Navarro, 979 F.2d 786, 788 (9th Cir.1992). This conclusion finds support in the testimony of the government's chemist, who stated that the only use for PCC is as an intermediate product in the manufacture of PCP.
 C. Amount Attributable to Osborne
 When the police raided Brim's garage, they discovered 22.9 kilograms of PCC, ready for the last stage of conversion to PCP. The government's expert testified that there was enough PCC to produce 29 kilograms of PCP. In addition, the police found piperidine and other precursor chemicals that together would yield another 14 kilograms of PCP. The district judge based Osborne's sentence on the entire amount that could have been produced in the garage. Osborne contends that the district court clearly erred in determining the amount of drugs attributable to him. We agree.
 Under section § 1B1.3, a defendant is responsible for his own acts and omissions; however, he is not necessarily responsible for the acts and omissions of his co-conspirators. U.S.S.G. § 1B1.3(a)(1). Conduct may only be included in the base offense level if it is "reasonably foreseeable" in connection with the criminal activity that he agreed to undertake. U.S.S.G. § 1B1.3 (n. 2). Petty, 992 F.2d at 890. The sentencing court may not simply rely on the total amount involved in the conspiracy, but must undertake an individualized evaluation of the amount for which each defendant is accountable, and make findings. Id.; see also Navarro, 979 F.2d at 788.
 Instead of making a finding as to the amount of drugs attributable to Osborne, the district judge concluded that the jury's verdict compelled her to sentence him based on the entire productive capacity of the PCP lab. During the sentencing hearing, the district judge stated her belief that the jury's verdict on the possession count compelled her to base Osborne's sentence on the 43 kilograms that the garage was capable of producing. In response to counsel's argument that Osborne should not be held accountable for the 23 kilograms that had already been made, the court stated: "the jury found beyond a reasonable doubt possession of 23 kilograms [of PCC]. How can I sentence, him, therefore, for only possession of 11 kilograms?"
 The district court's reasoning is flawed because the legal standard for conviction on this count is different from the legal standard for sentencing. Petty, 992 F.2d at 890. The jury could have convicted Osborne on the possession count under a Pinkerton theory of liability by finding that one of his coconspirators possessed the 23 kilograms. See supra part I.B. This finding, while sufficient to convict, is not sufficient for sentencing because it does not establish that Osborne himself possessed all of the PCC or that he could reasonably foresee that 23 kilograms would be manufactured. Therefore, in sentencing, the district court may not rely on the jury's verdict, instead of making her own finding as to the amount attributable to Osborne. See United States v. Conkins, 9 F.3d 1377, 1386-87 (9th Cir.1993).
 At the conclusion of the sentencing hearing, the district judge also stated:
 The evidence established that the defendant was involved in the entire conspiracy, the Sentencing Guideline 1B1.3(a)(1)(B). The illicit laboratory in the garage could have produced at least 43 kilograms of PCP. All the chemicals necessary to manufacture this amount of PCP were present in the garage and in defendant's possession at the time of arrest.
 Judgment and Commitment Order, Attachment, filed Sept. 23, 1994. In view of the district judge's earlier statements, it appears that this conclusion was based on the jury's verdict. However, even if this statement could be construed as an independent finding, it is erroneous in three respects.
 First, the general statement that Osborne was involved in the "entire conspiracy" falls short of the specificity required under section 1B1.3, see Conkins, 9 F.3d at 1387, Navarro, 979 F.2d at 789, because it says nothing about whether he should have foreseen that this amount of PCP would have been manufactured in connection with the activity he agreed to undertake. Osborne may only be held accountable for the amount that was reasonably foreseeable to him or within the scope of the agreement he entered. Petty, 992 F.2d at 891.
 Second, the district court's finding that Osborne was involved in the "entire conspiracy" conflicts with the jury's verdict on count two (manufacturing PCC, in violation of 21 U.S.C. § 841(a)(1)). The jury acquitted Osborne on count two, after receiving a Pinkerton instruction on this count. Specifically, the jury was instructed that Osborne could be convicted on this count if, during the time he was a member of the conspiracy, one of his co-conspirators manufactured PCC. The acquittal on this count demonstrates that, in the jury's view, Osborne was not a member of the conspiracy at the time the PCC found in the garage was manufactured. Because the district court may not base a defendant's sentence on conduct of which he was acquitted, United States v. Brady, 928 F.2d 844, 851-52 (9th Cir.1991), the district court was prohibited from holding Osborne accountable for manufacturing the 23 kilograms of PCC found in Brim's garage.[5] Its finding that he was involved in the "entire conspiracy" was clear error.
 Third, the district court clearly erred in stating that all the chemicals necessary to manufacture PCP were "in defendant's possession at the time of his arrest." This is erroneous because at the time of his arrest, the only items in Osborne's actual possession at the time of his arrest were cash, a pager, and keys--not including keys to the residence or garage housing the laboratory.[6] Because the jury could have convicted him of count 3--possession of PCC with the intent to manufacture PCP--under a Pinkerton theory of liability, the jury verdict does not establish his possession of the PCC for purposes of the sentencing. U.S.S.G. § 1B1.3 (n. 2); Petty, 992 F.2d at 890. Furthermore, there is no evidence that he possessed any chemicals other than the piperdine. The district court must make an independent finding as to what conduct is individually attributable to Osborne for sentencing purposes.
 The district court erred in concluding that the jury's verdict compelled it to sentence Osborne according to the entire amount of PCP that could have been produced from the materials in Brim's garage. In fact, the jury's verdict demonstrates that Osborne was not involved in the entire conspiracy. Accordingly, we remand for reconsideration of the amount that was reasonably foreseeable by Osborne or was within the scope of his agreement.
 III. The district judge clearly erred in concluding that Osborne was not a minor or minimal participant
 Osborne challenges the district judge's decision that he was not entitled to a downward sentence adjustment under § 3B1.2 (Mitigating Role) or a downward departure under Application Note 14 to § 2D1.1.[7] A defendant must qualify for a mitigating role adjustment under § 3B1.2 to be eligible for a downward departure under Application Note 14.[8] The denial of both downward adjustments rested on the same factual finding--that Osborne was involved "directly and actively over a protracted period of time in the operation of a PCP laboratory." Judgment and Commitment Order, Attachment, filed Sept. 23, 1994. Osborne asserts that this finding is clearly erroneous, and we agree.
 There was no evidence to support the district judge's finding. Officers first observed Osborne at Brim's garage at noon on July 24, 1993, and he was arrested approximately twelve hours later. None of Brim's neighbors recognized Osborne as someone they had seen at or around Brim's house prior to the date of his arrest. Nor did any of the employees at the chemical company from which Brim purchased precursor chemicals recognize Osborne. In fact, the government cites no evidence that Osborne was involved in the conspiracy in any way before the afternoon of July 24, and the indictment did not allege any culpable conduct on Osborne's part before July 24, 1993. While the sentencing judge is not limited by the charged conduct in considering role mitigation, United States v. Fine, 975 F.2d 596, 600 (9th Cir.1992) (en banc), her sentencing determinations must be based on the evidence. Here, the finding of protracted involvement is unsupported by the evidence.
 Moreover, for purposes of sentencing, the acquittal on count two precludes the district court from assuming that Osborne was involved in the conspiracy at the time that the 22.9 kilograms of PCC found in the garage were manufactured. The jury's verdict on this count directly undercuts the district judge's conclusion that Osborne had been involved in the conspiracy over a protracted period of time. The jury necessarily acquitted Osborne of being part of the conspiracy when the PCC was manufactured, and the district court was therefore precluded from basing her denial of a sentencing adjustment on a directly contrary finding. See Brady, 928 F.2d at 852.
 Because the district judge's denials of a "Role in the Offense" adjustment and a downward departure under Application Note 14 were premised on clearly erroneous factual findings, we vacate the sentence and remand for further proceedings.[9]
 The convictions are AFFIRMED; the sentence is VACATED and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Osborne does not argue that the district judge erred in giving the Pinkerton instruction
 
 
 [2]
 Osborne's base level was calculated to be 38 under section 2D1.1. With a Category I criminal history, his sentencing range was 235-293 months. The Presentence Report determined that, if he were sentenced under section 2D1.11, his base level would be 28. With that base level, his sentencing range would be 78-97 months
 
 
 [3]
 See also United States v. Fulbright, 69 F.3d 1468, 1474-75 (9th Cir.1995)
 
 
 [4]
 Specifically, the Guidelines drug equivalency table prescribes that one gram of PCC be treated as the equivalent of 680 grams of marihuana. According to Osborne, his base level would have been 36, and his range 188-235 months, if the district court had based his sentence on PCC rather than PCP
 
 
 [5]
 See also United States v. Putra, 1996 WL 89105 (9th Cir. March 4, 1995)
 
 
 [6]
 The district court also clearly erred in finding that Osborne had been involved in the conspiracy over a "protracted period of time." CR 130 at 53. As explained infra part III, there is no evidence to support this conclusion. However, it does not appear that the district judge based her determination of the amount of drugs for which Osborne was accountable on the finding of protracted involvement
 
 
 [7]
 This application has been renumbered but not amended in the 1995 Sentencing Guidelines. It was Application Note 16 at the time of Osborne's sentencing
 
 
 [8]
 The court may depart downward under Application Note 14 if the defendant's base level is greater than 36, the defendant qualifies for a mitigating role adjustment under § 3B1.2, and the defendant's offense level overrepresents the defendant's culpability in the criminal activity. U.S.S.G. § 2D1.1 Application Note 14
 
 
 [9]
 We note that the penalty in this case appears to be unusually harsh given the nature of the defendant's criminal history, background and apparent minimal involvement in the offense. Nothing in this opinion forecloses the district court, on remand, from considering any other downward adjustments or downward departures that may be appropriate