91 F.3d 157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Javier VALENCIA-HERNANDEZ, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio MENDOZA, Defendant-Appellant.
 No. 95-30349, 95-30356.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 9, 1996.
Decided July 24, 1996.
 
 Before: REAVLEY,* REINHARDT, WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Appellants Antonio Mendoza and Javier Valencia-Hernandez ("Valencia") appeal their convictions on one count of conspiracy to distribute methamphetamine and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and § 846. Appellants contend that the district court erred in denying their motions to suppress the fruits of a search. Mendoza also claims that the district court erred in failing to instruct the jury that mere proximity to methamphetamine is insufficient to establish possession. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we AFFIRM.
 
 DISCUSSION
 I. THE WARRANT
 
 3
 On December 28, 1994, Bellevue Police Detective Frank Cortez applied to King County Judge Linda Jacke for a telephonic search warrant in order to search 15223 N.E. 14th Place, Apt. 3304. Judge Jacke found that probable cause existed to search the apartment, and issued the warrant.[1] The warrant was executed several hours later, after the confidential informant ("CI") returned to the apartment for a pre-arranged meeting with Valencia and Mendoza, and (having been searched prior to entering the apartment) returned with a dollar bill that was wrapped around a white powder suspected to be methamphetamine. Both Mendoza and Valencia were arrested at the apartment and a 911 gram package of methamphetamine was found in a heater vent in the apartment.
 
 
 4
 Prior to trial, appellants filed motions to suppress the evidence found during the December 28, 1994 search and requested a Franks hearing to determine whether certain omissions and misstatements contained in Detective Frank Cortez' affidavit were material and were deliberately or recklessly made. On June 12, 1995, the district court held an evidentiary hearing as well as a Franks hearing with regard to the suppression motions, after which it denied appellants' motions, finding that the warrant was a standard warrant, not anticipatory, was supported by probable cause, and that the omission and misstatement in Cortez' affidavit were not reckless or deliberately made, nor were they material to the finding of probable cause. Mendoza and Valencia appeal this decision.
 
 
 5
 A. Did the warrant fail to meet the requirements of an anticipatory warrant?
 
 
 6
 We do not address whether the warrant issued failed to satisfy the requirements of an anticipatory warrant because the government does not attempt to uphold the warrant as an anticipatory warrant. See United States v. Ruddell, 71 F.3d 331, 333 (9th Cir.1995) (discussing requirements of anticipatory warrant).
 
 
 7
 B. Was the warrant supported by probable cause?
 
 
 8
 Appellants further argue that the district court erred in concluding that the warrant was supported by probable cause to believe that evidence of criminal activity could be found in the apartment at the time the warrant was issued. We disagree.[2]
 
 
 9
 Probable cause exists to issue a warrant where under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular location." Clark, 31 F.3d at 834 (citing Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983)). "Probable cause to believe that a suspect has committed a crime is not by itself adequate to secure a search warrant for the suspect's home. There must be reasonable cause to believe that the things listed as the objects of the search are located in the place to be searched." United States v. Ramos, 923 F.2d 1346, 1351 (9th Cir.1991) (citations omitted).
 
 
 10
 At the same time, " '[w]e require only a reasonable nexus between the activities supporting probable cause and the locations to be searched.' " United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir.1993) (citation omitted). "A 'reasonable nexus' does not require direct evidence that the items listed as the objects of the search are on the premises to be searched. The magistrate must 'only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.' " Id. (citation omitted); accord United States v. Hernandez, 80 F.3d 1253, 1258 (9th Cir.1996).
 
 
 11
 Here, Cortez' affidavit provides the following factual basis from which the judge could conclude that it would be reasonable to search for evidence of narcotics trafficking in the apartment: (1) Detective Cortez overheard three conversations between the CI and Valencia in which drug transactions were discussed; (2) Detective Cortez was present at a meeting with the appellants during which a specific transaction was agreed upon--the appellants agreed to sell Cortez cocaine and methamphetamine for a total sum of $28,000; (3) Valencia described the apartment as a stash house, a location where drug transactions were conducted, and suggested doing the transaction there; (4) after the second meeting, Mendoza took the CI to the apartment and told the CI that he only had about six ounces of cocaine in the apartment at the time; and (5) based on Cortez' experience, it is common for individuals involved in dealing narcotics to maintain records relating to the transactions in the residences or stash houses.
 
 
 12
 These facts are sufficient to provide a "reasonable nexus" between the activities supporting the finding of probable cause and the place to be searched. " '[B]ased on the nature of the evidence and the type of offense, a magistrate may draw reasonable inferences about where evidence is likely to be kept.' " United States v. Gil, 58 F.3d 1414, 1418-19 (9th Cir.) (surveillance that provided sufficient basis to infer that defendants lived at residences searched and were involved in drug trade demonstrated a fair probability that contraband would be found at the residences) (quoting United States v. Garza, 980 F.2d 546, 557 (9th Cir.1992)), cert. denied, 116 S.Ct. 430 (1995). Just as this court has recognized that " '[i]n the case of drug dealers, evidence is likely to be found where the dealers live,' " id. (citations omitted), the judge could reasonably conclude that there is a fair probability that evidence would be found at locations described by the drug dealers as stash houses used solely for narcotics transactions. This inference is strengthened by the fact that Mendoza told the CI that he had six ounces of cocaine in the apartment. Although appellants claim that it is likely that Mendoza took the cocaine with him when he left the apartment, there is still a fair probability that the contraband would be found in the apartment.
 
 
 13
 Thus, the instant case is distinguishable from United States v. Perez, 67 F.3d 1371, 1375, reh'g en banc granted, 77 F.3d 1210 (9th Cir.1996), United States v. Ramos, 923 F.2d at 1351-52 and United States v. Vasey, 834 F.2d 782 (9th Cir.1987), the cases upon which the appellants rely. Unlike in Perez, Vasey or Ramos, Mendoza's statement provides an explicit link between the apartment and the criminal activities giving rise to probable cause. Cf. Hernandez, 80 F.3d at 1260 (probable cause to search the defendant's garage upheld where revised affidavit would show that CI and other witness had preexisting relationship with defendant; the CI arranged a meeting with the defendant to repay a debt; the defendant denied having drugs to sell the CI, but the CI did not believe him; at some time in the past, the witness had seen the defendant use and sell cocaine in the garage; at some time in the past, the witness had seen the defendant take small quantities of cocaine from the red tool box in the garage; and the agent saw a red tool box with the defendant's name on it.); Pitts, 6 F.3d at 1369 (affidavit provided reasonable nexus between drug dealing activities and Pitts' alleged residence where a cooperating witness had been a courier for a dealer who was allegedly supplied by Pitts, the witness did not obtain cocaine from the dealer following Pitts' arrest, and Pitts was involved in a crack sale a month prior to the application for the warrant at another residence); Garza, 980 F.2d at 551 (probable cause to search Garza's residence upheld where affidavit stated that Garza was the driver of the vehicle in which cocaine was delivered to another; a co-defendant claimed Garza was the source of the cocaine and said he had called Garza at his residence earlier on the day of the arrest; Garza's identification at the time of arrest showed that he lived at address later searched; and co-defendant supplied phone number for Garza consistent with the address); United States v. Ocampo, 937 F.2d 485, 490-91 (9th Cir.1991) (observation of countersurveillance activity, tandem driving, a car switch and beeper phone calls, in addition to officer's extensive field experience, provided probable cause to believe drug related activities were occurring; the fact that car was returned to residence after car switch in addition to officer's conclusion that residence was used for drug storage provided reasonable nexus for search of residence).
 
 
 14
 In sum, the affidavit sets forth facts from which the judge could conclude that there was a fair probability that evidence of the drug offenses would be found at the apartment.
 
 
 15
 C. Did the district court err in finding that Cortez' inclusion of false information and his omission of information in the affidavit was not reckless, deliberate or material?
 
 
 16
 Appellants further contend that Officer Cortez recklessly or deliberately included material false information and omitted material information from his affidavit. The district court found that Cortez misrepresented Mendoza's criminal history through an "innocent mistake" due to the similarity of the names on the rap sheet. The court also found that Cortez did not deliberately omit the fact that the CI informed him that Valencia had given him a drug sample, which he had thrown away because he was with his wife. Regardless of whether the omissions were deliberate or reckless, the district court concluded that they were not material, i.e., the affidavit as corrected supported a finding of probable cause.[3]
 
 
 17
 To begin, whether it was clear error for the district court to find that the misstatement regarding Mendoza's criminal history was not deliberately intended to mislead or recklessly made is a close question. "The determination of whether misstatements or omissions are knowing or reckless or merely negligent is a factual inquiry but it is guided by cases in which this court has found reckless disregard by an affiant." United States v. Dozier, 844 F.2d 701, 705 (9th Cir.), cert. denied, 488 U.S. 927 (1988). On the one hand, we have upheld findings that misstatements clearly contradicted by documents such as rap sheets were not reckless where the affiant has given a plausible explanation for the misstatement.[4] Here, however, Officer Cortez offered no explanation for his failure to notice that the rap sheet was for a different individual (Antonio L. Mendoza rather than Antonio M. Mendoza), who was in fact serving a prison sentence at that time.[5]
 
 
 18
 Similarly, it is difficult to understand how Detective Cortez could have recounted in his affidavit that the CI told him that he had encountered Valencia and Valencia had asked whether Cortez was still interested in doing a deal, but omitted that the CI told him that he received a sample of methamphetamine and destroyed it because he was with his wife. Cortez explained at the Franks hearing that he did not believe it was necessary to include that information in the affidavit because it was in his police report. Moreover, he believed that the affidavit contained sufficient facts to show probable cause. See Garza, 980 F.2d at 551 ("Not all information in the government's possession need be included in the warrant affidavit.... Only if omitted facts 'cast doubt on the existence of probable cause do they rise to the level of misrepresentation.") (internal citations and quotations omitted).
 
 
 19
 Regardless of whether it was clear error to find that the misstatement and omission were not reckless or deliberate, the affidavit, with the correct information, still provides probable cause to search the apartment. As discussed above, the probable cause finding relies primarily on the discussions Cortez overheard between Valencia and the CI, Cortez' meetings with Valencia and Mendoza, their agreement to sell Cortez methamphetamine and cocaine, Valencia's description of the apartment as a stash house and the CI's statement that Mendoza had six ounces of cocaine in the apartment. Excising the false statement regarding Mendoza's criminal history and adding the information regarding the methamphetamine sample does not affect the probable cause analysis.[6] Thus, we conclude that the misstatement and omission were not material to the finding of probable cause.
 
 
 20
 II. DID THE DISTRICT COURT ERR IN FAILING TO INSTRUCT THE JURY THAT MERE PROXIMITY TO METHAMPHETAMINE DOES NOT ESTABLISH POSSESSION?
 
 
 21
 Mendoza claims the district court erred in failing to instruct the jury that mere presence or proximity to the methamphetamine is insufficient to establish possession. We disagree.[7]
 
 
 22
 "[I]n general, [a] defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." Duran, 59 F.3d at 941 (quoting United States v. Dees, 34 F.3d 838, 842 (9th Cir.1994)) (internal quotations omitted). " 'It is not reversible error[, however], to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory.' " Id. (quoting Dees, 34 F.3d at 842). We have held that "[i]f the government's case is based on more than just a defendant's presence, and the jury is properly instructed on all elements of the crime, then a 'mere presence' instruction is unnecessary." United States v. Negrete-Gonzalez, 966 F.2d 1277, 1282 (9th Cir.1992); accord United States v. Medrano, 5 F.3d 1214, 1218 (9th Cir.1993).[8]
 
 
 23
 Here, the government's case was based on far more than Mendoza's mere presence, and therefore the instructions on possession were adequate.[9] Both Mendoza and Valencia negotiated with Detective Cortez, discussing the quantity, price and quality of the cocaine and methamphetamine. Mendoza left the table at one point to call a supplier to confirm that the drugs were available. Mendoza also offered to cook some of the cocaine into crack. Mendoza led the CI to the stash house and told the CI that he had six ounces of cocaine and that Valencia would return later with the methamphetamine. Later that same day, the CI went to the apartment, returned with a sample of methamphetamine, the warrant was executed, and Mendoza and Valencia were arrested in the apartment where the methamphetamine was found.
 
 
 24
 Thus, we conclude that the district court did not err in failing to instruct on 'mere presence' because the government's case was not based upon Mendoza's mere presence at the apartment where the methamphetamine was found. See Medrano, 5 F.3d at 1218 (mere presence instruction not necessary where evidence showed that Medrano sought to purchase ephedrine from undercover agents, agents took keys to Medrano's car, drove car away, loaded barrels of ephedrine into the trunk, returned the car and the keys to Medrano, after which Medrano paid for the ephedrine); Chambers, 918 F.2d at 1460 (it was not plain error to fail to instruct on mere presence where the case against the defendant was not solely that he was in the van and associating with the passenger who disposed of the cocaine, but that as the driver, he engaged in a lengthy, reckless, high speed chase, that assisted the passenger in getting rid of the cocaine). Cf. Negrete-Gonzales, 966 F.2d at 1282 (defendant entitled to mere presence instruction where government's case rested on fact that defendant had accompanied alleged co-conspirator to the parking lot meeting where co-conspirator suggested returning to apartment to complete the deal; co-conspirator stayed in the family room while the attempted transaction was conducted in the bedroom; defendant's activity in the parking lot was described as countersurveillance activity; and defendant passed a knife into the bedroom when requested by his co-conspirator).
 
 CONCLUSION
 
 25
 For the foregoing reasons, we AFFIRM the appellants' convictions.
 
 
 
 *
 Hon. Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cortez' oral affidavit stated that he believed that probable cause existed "for an anticipatory warrant to be issued" that would not be executed unless "the CI is able to see narcotics in the apartment during his meeting with [Valencia] or [Mendoza]." However, the warrant stated that based upon probable cause, any Washington state peace officer was authorized (1) to search 15223 N.E. 14th Place, Apt. 3304 within three days of the issuance of the warrant and (2) to seize the enumerated items
 
 
 [2]
 We review the district court's decision to deny a motion to suppress de novo. United States v. Clark, 31 F.3d 831, 834 (9th Cir.1994), cert. denied, 115 S.Ct. 920 (1995). We review the magistrate judge's determination of probable cause for the purposes of issuing a search warrant for clear error. United States v. Fulbright, 69 F.3d 1468, 1474 (9th Cir.1995). "This court must determine whether there was a 'substantial basis' for concluding that the warrant was supported by probable cause. The magistrate making the original determination of probable cause is accorded significant deference by the reviewing court." Id. (citations omitted)
 
 
 [3]
 We review the district court's findings regarding whether false statements made in an affidavit are intentional or reckless for clear error. Hernandez, 80 F.3d at 1260. Whether any omission or false statement was material to the determination of probable cause is a mixed question of law and fact, which we review de novo. Id.; Garza, 980 F.2d at 551
 
 
 [4]
 See United States v. Kyllo, 37 F.3d 526, 528 (9th Cir.1994) (district court's conclusion that agent's erroneous claims that spreadsheet was an official PG & E document, that it showed maximum power usage and that Kyllo was therefore using too much electricity were not reckless was not clearly erroneous where agent received the document from the head of the Regional Narcotics Enforcement Team, who had received it from PG & E, and where the agent had used the spreadsheet in prior cases to successfully predict marijuana growth operations); United States v. Motz, 936 F.2d 1021, 1023 (9th Cir.1991) (upholding finding that inaccuracies in affidavit were negligent where affiant misstated that father-in-law of one suspect had been arrested on drug charges and omitted that the informant was involved in a lawsuit against the suspect; affiant testified that it was not unusual for an arrest not to appear in the state computer, the arrest was verified by a state trooper and the affiant did not believe that the informant's reasons for cooperating needed to be included); Dozier, 844 F.2d at 705 (upholding district court's finding that affiant's misstatement that suspect had been convicted of multiple drug violations, when in fact he had been convicted of only one violation as a juvenile, which conviction had been set aside, was not recklessly made where affiant stated he did not know how to read a rap sheet correctly)
 
 
 [5]
 See United States v. Elliot, 893 F.2d 220, 222-23 (9th Cir.) (district court's finding that affiant's statements regarding electricity usage based upon electric bill for different apartment were reckless or intentional upheld), cert. denied, 498 U.S. 904, 111 S.Ct. 268 (1990); United States v. Miller, 753 F.2d 1475, 1478 (9th Cir.1985) (omission of informant's perjury conviction not reckless where no officer was aware of the conviction and it was not mentioned on the California rap sheet or Oregon teletype); United States v. Chesher, 678 F.2d 1353, 1360-62 (9th Cir.1982) (remanding for Franks hearing on recklessness where agent who was allegedly familiar with the Hells Angels Motorcycle Club would know that the defendant had been expelled from the Club four years prior to the issuance of the warrant; that the agent based his claim of current knowledge on information four and eight years old; and that agent failed to discover report stating that defendant was no longer a club member)
 
 
 [6]
 Cf. United States v. Ippolito, 774 F.2d 1482, 1485-86 (9th Cir.1985) (misstatements regarding informants' unwillingness to testify and unfamiliarity with the entire conspiracy and omission of fact that one informant was willing to testify and had the potential to uncover entire conspiracy were material to finding of probable cause to issue wiretap order); United States v. Stanert, 762 F.2d 775, 780-81 (9th Cir.1985) (remanding for Franks hearing where following omissions and misstatements were material: anonymous caller stated that defendants might be using drugs, not that they were using ether to manufacture drugs; although one defendant had been arrested in 1980, affidavit failed to state that he had not been convicted of any offense; and the affidavit failed to state that explosion at the residence was before defendants moved in), amended, 796 F.2d 1410 (9th Cir.1985)
 
 
 [7]
 We review de novo whether the jury instructions, in their entirety, adequately cover the defendant's theory of defense. United States v. Duran, 59 F.3d 938, 941 (9th Cir.) (citing United States v. Gomez-Osorio, 957 F.2d 636, 642 (9th Cir.1992), cert. denied, 116 S.Ct. 535 (1995). If, however, the parties dispute whether the required factual foundation exists for a particular instruction, we review for abuse of discretion. Id
 
 
 [8]
 It is, however, clear in this circuit that "neither proximity to the contraband, presence on property on which contraband is recovered nor association with a person having actual possession of the contraband is sufficient proof of constructive possession." United States v. Chambers, 918 F.2d 1455, 1459 (9th Cir.1990) (citations omitted). This is because "[m]ere proximity, presence and association 'go[ ] only to [the contraband's] accessibility, not to the dominion or control which must be proved to establish possession.' " Id. (citation omitted)
 
 
 [9]
 The court instructed the jury that in order to find the defendants guilty of possession of methamphetamine with intent to distribute the government must show first, that the defendant possessed the drug and second, that he possessed it with intent to deliver it to another person. The court further instructed the jury that:
 A person has possession of something if the person knows of its presence and has physical control of it, or has the power and intention to control it.
 More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.